# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ARKANSAS NURSING HOME ACQUISITION, LLC, *et al.*, | * | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No. RDB-19-3632 |
| | * | |
| CFG COMMUNITY BANK, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

This is one of two cases arising from a failed nursing home enterprise involving Alan Zuccari ("Zuccari") and Defendant John W. "Jack" Dwyer ("Dwyer"). *See Dwyer, et al. v. Zuccari* (RDB-19-1272).[1]  In this case, two entities controlled by Zuccari, Arkansas Nursing Home Acquisition, LLC ("ANHA") and AJZ Capital, LLC ("AJZ Capital") (collectively, "Plaintiffs") seek to recover losses from the collapse of the nursing home enterprise.  Plaintiffs have sued Defendants Brian K. Reynolds ("Reynolds") and Dwyer, as well as several entities Dwyer allegedly controls:  CFG Community Bank ("CFG Bank"), Capital Funding Group, Inc. ("Capital Funding Group"), CSCV Holdings, LLC ("CSCV Holdings"), CSCV Consulting, LLC ("CSCV Consulting"), Milestone Retirement Companies, LLC ("New

---

[1] In that case, Dwyer and Capital Funding Group, Inc. filed suit against Zuccari seeking to recover expenditures with respect to the settlement of professional liability claims.  This Court has dismissed all but one of the claims asserted in that action.

Milestone"), and CSCV Real Estate Holdings, LLC ("CSCV Real Estate") (collectively, "Defendants").

The Complaint (ECF No. 1) contains seventeen counts, as follows:

| COUNT | TITLE | DEFENDANTS |
|---|---|---|
| I | Fraudulent Conveyance | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| II | Fraudulent Conveyance | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| III | Fraudulent Conveyance | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| IV | Fraudulent Conveyance | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| V | Fraudulent Conveyance | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| VI | Breach of Fiduciary Duty | Dwyer, Capital Funding Group, CSCV Holdings and CSCV Consulting |
| VII | Indemnification | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| VIII | Conversion | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| IX | Civil Conspiracy | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| X | Accounting | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting and New Milestone |
| XI | Aiding and Abetting | New Milestone |
| XII | Breach of Fiduciary Duty | Dwyer, Capital Funding Group, CSCV Real Estate and Reynolds |
| XIII | Conversion | Dwyer and Reynolds |
| XIV | Civil Conspiracy | Dwyer, CSCV Real Estate, and Reynolds |
| XV | Unjust Enrichment | Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting, Reynolds and New Milestone |
| XVI | Aiding and Abetting | CSCV Real Estate |
| XVII | Imputed Liability | CFG Bank and Capital Funding Group |

Now pending is Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 16), in which Defendants seek the dismissal of New Milestone for lack of personal jurisdiction and

the dismissal of all Counts for failing to state a cause of action. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, the Motion to Dismiss (ECF No. 16) is GRANTED IN PART and DENIED IN PART. Specifically, New Milestone is DISMISSED for lack of personal jurisdiction. All Counts except Counts XII, XIII, and XVI are DISMISSED.[2] Count XII may proceed as to Defendant CSCV Real Estate. Count XIII may proceed as to Defendants Dwyer and Reynolds. Count XVI may proceed as to CSCV Real Estate. In summary, the following claims remain:

| COUNT | TITLE | DEFENDANTS |
|-------|-------|------------|
| XII | Breach of Fiduciary Duty | CSCV Real Estate |
| XIII | Conversion | Dwyer and Reynolds |
| XVI | Aiding and Abetting | CSCV Real Estate |

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This case arises from a failed nursing home business enterprise involving Dwyer, Zuccari, and a host of business entities they allegedly controlled. The parties created this somewhat complex arrangement of business entities to insulate themselves from liability while conducting a nursing home business. (Compl. ¶ 31, ECF No.

---

[2] As in Dwyer's suit against Zuccari, *Dwyer, et al. v. Zuccari* (RDB-19-1272), most of the Counts asserted in this action cannot survive a motion to dismiss.

1.)   Plaintiffs allege that Defendants used their web of business entities to devise three "schemes" which ultimately deprived them of valuable business interests.

The entities on Zuccari's side of the equation are as follows.  Zuccari, a Virginia resident, is alleged to be the sole member of ANHA, which is a Virginia limited liability company ("LLC").  (*Id.* ¶¶ 1, 4.)  Zuccari is also alleged to have a 99% ownership interest in AJZ Capital, a Virginia LLC.  (*Id.* ¶¶ 3-4.)  The remaining 1% ownership interest belonged to a "person who is related to" Zuccari.  (*Id.* ¶ 4.)  Zuccari New Port Richey, LLC ("Zuccari New Port Richey"), a Delaware limited liability company with its principal place of business located in Fairfax County, Virginia, also falls on Zuccari's side of the aisle—though the Complaint does not specify exactly who or what owns Zuccari New Port Richey.[3]  (*Id.* ¶ 2.)

Defendant Dwyer's side is a bit more complex.  Dwyer, a Florida resident, is the "sole owner" of Defendant CFG Bank, a Maryland corporation with its principal place of business in Baltimore, Maryland.  (*Id.* ¶¶ 5-7.)  Dwyer is alleged to have "used CFG Bank to facilitate the wrongful conduct" described in the Complaint, including using CFG Bank to funnel converted funds.  (*Id.* ¶ 6.)  Dwyer is also the Chairman of the Board and controlling principal of Defendant Capital Funding Group, a Maryland corporation with its principal place of business in Baltimore County, Maryland.  (*Id.* ¶¶ 7, 9.)  Dwyer allegedly used Capital Funding Group as his "alter ego," and treated its assets and liabilities as his own.  (*Id.* ¶ 8.)

---

[3] Defendants represent that AJZ Capital, in which Zuccari has a 99% ownership interest, is the sole member of Zuccari New Port Richey. (ECF No. 16-1 at 4.)  This Court cannot accept the representation as true because it is not alleged in the Complaint.  Nevertheless, the ownership of Zuccari New Port Richey is not material to the resolution of the present motion.

Capital Funding Group, Dwyer's alleged "alter ego," owns 90% of Defendant CSCV Holdings and is a member of Defendant CSCV Real Estate (both with their principal places of business in Maryland).  (*Id.* ¶¶ 9, 13.)  Defendant Brian Reynolds owns the remaining 10% of CSCV Holdings and is the other member of CSCV Real Estate.  (*Id.*)  CSCV Holdings owns 100% of Defendant CSCV Consulting.  (*Id.* ¶ 10.)  Dwyer allegedly had "complete control" over CSCV Holdings and CSCV Consulting.  (*Id.* ¶ 26.)  Dwyer is also alleged to have control over a separate entity, CHG New Port Richey.  (*Id.* ¶ 17.)

The Zuccari entities and the Dwyer entities allegedly combined ownership interests in a series of additional LLCs for the purposes of carrying out at least three separate projects, which are described in the Complaint as "Compass Pointe" (*Id.* ¶¶ 21-45) the "Vero Deal" (*Id.* ¶¶ 46-52) and "New Port Richey" (*Id.* ¶¶ 53-63).  Each project unraveled and gave rise to three alleged "schemes" (ECF No 17 at 9) by Dwyer and his entities to deprive Plaintiffs of their business interests. (ECF No. 1 at 3-4.)

## I.    Compass Pointe.

Compass Pointe is a trade name used by SLC Professionals and a series of affiliated LLCs to manage assisted living facilities located predominately in Florida and Arkansas.  (ECF No. 1 ¶¶ 27, 29.)  SLC Professionals was formed as a Delaware limited liability company on January 21, 2009.  (*Id.* ¶ 21.)  Effective January 1, 2012, ANHA (whose sole member was Zuccari) and CSCV Consulting (over which Dwyer allegedly had "complete control") became the members of SLC Professionals.  (*Id.* ¶¶ 4, 22, 26.)  CSCV Consulting (the Dwyer entity)

owned 51% of the company,[4] and ANHA (the Zuccari entity) owned the remaining 49%.  (*Id.* ¶ 22.)  ANHA and CSCV Consulting agreed to operate SLC Professionals pursuant to the terms of an "Amended and Restated Limited Liability Company Operating Agreement of SLC Professionals Holdings, LLC, a Delaware Limited Liability Company" (the "SLC Professionals' Operating Agreement").  (*Id.* ¶ 23; SLC Professionals Operating Agreement, Compl. Ex. 1, ECF No. 1-2.)  The SLC Professionals' Operating Agreement granted Dwyer complete control over SLC Professionals by appointing Daniel S. Baird ("Baird") and Defendant Reynolds, who worked for Dwyer "and/or" Capital Funding Group, as the Managers of SLC Professionals.  (ECF No. 1 ¶ 24; ECF No. 1-2 § 8.1.)  Additionally, the Operating Agreement provided that Dwyer, "on behalf of CSCV [Consulting]," would have the final say on any "Major Decisions," a term defined in the Agreement to include merging or consolidating the company.  (ECF No. 1-2 § 8.3.)

SLC Professionals in turn owned several limited liability companies that owned and managed the Compass Pointe assisted living facilities.  (ECF No. 1 ¶ 27.)  These companies included, but were not limited to:  Capital Health Group Management, LLC, CHG Management Newport Richey, LLC, CHG Management Woodbury, LLC, SLC Professionals, LLC, SLC Professionals Monarch, LLC, Addit, LLC, Addit-Monarch, LLC, SLC Professionals Chai, LLC, SLC Professionals REO, LLC, and SLC Professionals AR7 (collectively, the

---

[4] The Complaint states that "CSCV Holdings own[ed] fifty-one percent (51%) of SLC Professionals." (ECF No. 1 ¶ 22.)  This appears to be a typographical error, as CSCV Consulting—not CSCV Holdings—is alleged to be a member of SLC Professionals and the SLC Professionals' Operating Agreement lists CSCV Consulting as a 51% owner.  *Compare* ECF No. 1 ¶ 22 *with* ECF No. 1-2 at 37.  Ultimately, for purposes of the present motion, it does not matter which of these two entities was a member of SLC Professionals, and the typographical error is understandable considering the array of similarly named entities involved in this case.

"Management Companies"). (*Id.*) Dwyer allegedly exercised "complete control" over the Management Companies by virtue of his "complete control" over CSCV Holdings, CSCV Consulting, and SLC Professionals. (*Id.* ¶ 28.)

By 2015, residents of the Compass Pointe facilities had filed numerous lawsuits against SLC Professionals and the Management Companies alleging bodily injuries due to negligent care. (*Id.* ¶ 32.) Additional claims were anticipated. (*Id.*) Confronted with potentially crushing liability, Dwyer allegedly arranged a transaction whereby the assets of SLC Professionals and the Management Companies could be shielded from their creditors. A Combination Agreement purportedly governs the transaction, which became effective January 1, 2017. (*Id.* ¶¶ 33-34; Combination Agreement, Compl. Ex. 2, ECF No. 1-3.) In this transaction, "SLC Professionals was to be dissolved, and the assets and operations of the Management Companies were to be combined" with a Washington LLC formed by Dwyer called Milestone Retirement Communities, LLC ("Milestone WA") to form a new entity described as "NewCo" in the Combination Agreement. (ECF No. 1 ¶ 33; ECF No. 1-3.) The combined entity came to be known as Milestone Retirement Companies, LLC ("New Milestone"), which is a Defendant in this case. (*Id.* ¶ 33.) Dwyer allegedly obtained a "substantial and preferred" ownership interest in New Milestone and became its Chairman of the Board. (*Id.* ¶ 40.)

The transaction allegedly left SLC Professionals and the Management Companies high and dry in the face of mounting lawsuits. New Milestone did not expressly assume the liabilities of SLC Professionals or the Management Companies. (*Id.* ¶ 37.) SLC Professionals and the Management Companies allegedly did not receive any compensation or other consideration in exchange for combining their assets with Milestone WA to form New

Milestone. (*Id.* ¶ 36.) As a result, SLC Professionals the Management Companies could not satisfy judgments obtained against them by the Compass Pointe residents. (*Id.* ¶ 38.)

Plaintiffs allege that SLC Professionals and the Management Companies have been unable to satisfy an alleged obligation to indemnify ANHA and Zuccari following the creation of New Milestone. The SLC Professionals Operating Agreement contains an indemnification provision requiring the LLC to indemnify its members, managers, and affiliates. (ECF No. 1-2 § 8.9.) Residents have asserted claims against, and have attempted to collect judgments from, ANHA and Zuccari because SLC Professionals and the Management Companies have essentially been rendered judgment proof. (*Id.* ¶ 45.) Drained of all assets, however, SLC Professionals and the Management Companies are also unable to indemnify ANHA or Zuccari. (*Id.* ¶¶ 43-45.)

## II.   The Vero Deal.

The "Vero Deal" refers to a purchase of an assisted living facility in Massachusetts. (*Id.* ¶ 46.) In 2014, a private real estate investment trust ("REIT") named CSV MA Real Co. Holdings, LLC ("CSV MA LLC") was formed to purchase the facility. (*Id.* ¶¶ 3, 46.) CSV MA LLC has several members: (1) three entities controlled by BlueMountain Capital Management, LLC: SNF Holdings 1, LLC, SNF Holdings 2, Ltd., and SNF Funding, LLC (the "SNF Entities"); (2) AJZ Capital (99% owned by Zuccari); and (3) CSCV Real Estate. (*Id.* ¶ 14.) Of these, the "Operating Member" is CSCV Real Estate, whose members are Defendant Reynolds and Capital Funding Group (Dwyer's alleged "alter ego"). (*Id.* ¶ 13.)

AJZ Capital made a capital contribution of $111,595.00 to CSV MA LLC for the purpose of facilitating the Vero Deal.  (*Id.* ¶¶ 3, 47.)

In January 2017, the Board of Directors of CSV MA LLC—which included Dwyer and Reynolds—with the approval of BlueMountain Capital Management, LLC, dissolved and liquidated CSV MA LLC by selling the real property and other assets that had been purchased in the Vero Deal.  (*Id.* ¶¶ 48-49.)  The proceeds from the sale were retained for approximately six months.  (*Id.* ¶ 50.)  Ultimately, in mid-2017, the proceeds were distributed in a manner not authorized by the Operating Agreement.  (*Id.* ¶ 51.)  AJZ Capital was allegedly entitled to receive a distribution of approximately $180,000, but this distribution was never made.  (*Id.* ¶ 51.)  Plaintiffs allege that Dwyer and Reynolds, acting through Capital Funding Group, CSCV Real Estate, and CSV MA LLC, and with the cooperation of BlueMountain Capital Management, LLC, caused the distributions owed to AJZ Capital to be misappropriated.  (*Id.* ¶ 52.)

## III.   New Port Richey.

The New Port Richey investment project involved the purchase of a single assisted living facility located in New Port Richey, Florida (the "New Port Richey Facility").  (*Id.* ¶ 53.) In 2010, New Port Richey Holdings, LLC ("New Port Richey Holdings") was formed as a Delaware limited liability company with its principal place of business in Baltimore, Maryland. (*Id.* ¶ 15.)  New Port Richey Holdings, LLC, serves as a holding company for two subsidiaries which owned and operated the New Port Richey Facility—New Port Richey Real Estate, LLC and New Port Richey Operating, LLC.  (*Id.* ¶ 53.)  At the time of its formation, the members

of New Port Richey Holdings, LLC were CHG New Port Richey, LLC ("CHG New Port Richey") (45% ownership interest), Zuccari New Port Richey (45%), and Morningside New Port Richey, LLC (10%) (*Id.* ¶ 16.)  Morningside New Port Richey is no longer a member of New Port Richey Holdings. (*Id.*)  CHG New Port Richey, which is "controlled by" Dwyer, is the manager of New Port Richey Holdings.  (*Id.* ¶ 17.)

At all relevant times, the New Port Richey Facility has been managed under the umbrella of Compass Pointe (later New Milestone).  (*Id.* ¶ 57.)  At the same time, Compass Pointe/New Milestone has been responsible for managing other facilities (the "Other Facilities") in which neither ANHA, AJZ Capital, Zuccari New Port Richey, nor Zuccari himself held any ownership interest. (*Id.* ¶ 58.)   Both the New Port Richey Facilities and the Other Facilities have sustained substantial operating losses.  (*Id.* ¶ 59.)  These operating losses have allegedly been allocated to ANHA on a 49% basis (*i.e.*, based on ANHA's ownership interest in SLC Professionals).  (*Id.* ¶ 60.)   Plaintiffs allege that Dwyer directed this allocation without notifying them and without the required consent of New Port Richey.  (*Id.* ¶¶ 61-62.)

## IV.    Procedural Posture.

This lawsuit is one of two related cases before this Court.  On April 30, 2019, Dwyer and Capital Funding Group, Inc. filed suit in this Court against Zuccari seeking to recover expenditures associated with the settlement of professional liability claims.  *Dwyer, et al. v. Zuccari*, RDB-19-1272 (D. Md.), ECF No. 1.  On March 19, 2020, this Court dismissed all but one of the claims asserted in that action.  *Dwyer, et al. v. Zuccari*, RDB-19-1272 (D. Md.), ECF Nos. 17, 18.

Plaintiffs commenced this action on December 24, 2019.  Now pending is Defendants'
Motion to Dismiss Plaintiffs' Complaint (ECF No. 16), in which Defendants seek the
dismissal of New Milestone for lack of personal jurisdiction and the dismissal of all seventeen
Counts in the Complaint for failing to state a cause of action.

## STANDARD OF REVIEW

### I.    Motion to Dismiss for Lack of Personal Jurisdiction.

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for
lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the
moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  The jurisdictional question
is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a
ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145
F. Supp. 3d 486, 489 (D. Md. 2014).  While a court may hold an evidentiary hearing or permit
discovery as to the jurisdictional issue, it also may resolve the issue on the basis of the
complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs
Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F. Supp. 3d at 489.
If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make
"a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional
challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276.  When considering whether the plaintiff
has made the requisite showing, "the court must take all disputed facts and reasonable
inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs.*, Inc., 334
F.3d 390, 396 (4th Cir. 2003).  Notably, "a threshold prima facie finding that personal

jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (emphasis in original) (citation omitted).

## II.    Motion to Dismiss for Failure to State a Claim.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  To satisfy Rule 8(a)(2), a complaint need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirecTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

## ANALYSIS

As in the companion case of *Dwyer, et al. v. Zuccari* (RDB- RDB-19-1272), there are numerous deficiencies in the multi-count Complaint filed in this case.  Each of the seventeen

12

Counts asserted in this Complaint suffers from one defect or another; many must be dismissed in their entirety.  This Memorandum Opinion begins by discussing several issues which affect multiple counts (Sections I and II), then discusses the individual Counts (Sections III, IV, V, VI, VII, VIII, IX, X, and XI), and finally addresses the issue of punitive damages (Section XII).  In general, the Complaint fails to state a claim arising from the Compass Pointe/New Milestone transaction and the allocation of expenses associated with New Port Richey, but has stated claims arising from the alleged misappropriation from the sale of the Vero Deal facility.

## I.    Allegations Involving SLC Professionals.

The Complaint fails to present one of its core allegations in a coherent fashion.  Several Counts in the Complaint are premised on the allegation that the assets of *both* SLC Professionals and the Management Companies were transferred to form Defendant New Milestone. [5]  (*See, e.g.*, ECF No. 1 ¶ 33 ("Dwyer arranged a transaction with . . . [Milestone WA] to transfer the assets (but not the liabilities) of SLC Professionals and the Management Companies to a new company to be formed by Dwyer and Milestone WA."))   In other locations, however, Plaintiffs allege that the assets of the Management Companies—not those of SLC Professionals—were transferred.  (*Id.* ¶ 33 ("SLC Professionals was to be dissolved, and the assets and operations of the Management Companies were to be combined . . . with those of Milestone WA to form Defendant Milestone."); *id.* ¶ 35 ("[A]ll or substantially all of

---

[5] Specifically, Counts I, II, III, IV, V, VII, VIII, IX, X, XI, and XV allege that assets were transferred from SLC Professionals *and* the Management Companies to form New Milestone.  (ECF No. 1 ¶¶ 67, 73, 78, 84, 90, 102, 107, 110, 114, 119, 136.)

the operational assets, including the management contracts, together with the employees of the Management Companies, were transferred to Defendant Milestone . . . .")). The Complaint further alleges that this transfer was conducted "pursuant to" a Combination Agreement, which is attached to the Complaint. (*Id.* ¶¶ 33-34; Combination Agreement, ECF No. 1-2.) Problematically, only the Management Companies and Milestone WA—not SLC Professionals—are listed as parties to that agreement. (ECF No. 1-2 at Ex. A.)

Defendants argue that the Combination Agreement contradicts any allegation that the assets of SLC Professionals were transferred to New Milestone, and therefore any such allegation cannot be accepted as true. This assertion informs Defendants' arguments for dismissal of Counts I, II, III, IV, V, VI, VII, VIII, IX, XI, and XV. Plaintiffs argue that the Combination Agreement was not attached to the Complaint for its truthfulness, but rather in support of an allegation that the document is fraudulent. (ECF No. 17 at 17.)[6]

As this Court has previously explained, "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." *Nicholson v. Fitzgerald Auto Mall*, RDB-13-3711, 2014 WL 2124654, at *4 (D. Md. May 20, 2014) (citing *Hosack v. Utopian Wireless Corp.*, DKC–11–0420, 2011 WL 1743297, at *5 (D. Md. May 6, 2011); *Ramos v. Bank of Am., N.A.*, DKC–11–3022, 2012 WL 5928732, at *4 (D. Md. Nov. 26, 2012)). Similarly, courts may credit a document attached to the Complaint over contradictory allegations, so long as the Complaint shows that the Plaintiffs have adopted its contents. *Kantsevoy v. LumenR LLC*,

---

[6] Pincites refer to the pagination assigned by the Court's CM/ECF System.

301 F. Supp. 3d 577, 592 (D. Md. 2018) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016).

Both the allegations of the Complaint and the Combination Agreement attached thereto contradict the Plaintiffs' allegation that SLC Professionals' assets were transferred to Milestone WA and used to form New Milestone.  As discussed, the Complaint in some instances alleges that the assets of SLC Professionals were transferred but also alleges that "SLC Professionals was to be dissolved, and the assets and operations of the Management Companies were to be combined . . . with those of Milestone WA to form Defendant Milestone."  (ECF No. 1 ¶ 33.)  In the immediately following paragraph, the Complaint introduces the Combination Agreement as Exhibit 2 to the Complaint.  (*Id.* ¶ 34.)  The Combination Agreement reflects that it binds Milestone WA and a series of companies listed in Exhibit A, which the Agreement labels the "Compass Pointe" entities and which the Complaint refers to the as the "Management Companies."  (ECF No. 1 ¶ 27; ECF No. 1-3, Ex. A.)  The Compass Pointe entities include the Management Companies but do *not* include SLC Professionals.  (ECF No. 1-3 Ex. A.)  The signature page reflects that Capital Health Group Management, LLC signed on behalf of the Compass Pointe entities as their common "sole member."  (*Id.* at 80.)

The Combination Agreement indicates that the assets of the Management Companies (or the "Compass Pointe" entities)—not the assets of SLC Professionals—were transferred to form "NewCo" (now Defendant New Milestone).[7]  (ECF No. 1-3 at 9.)  The Plaintiffs have

---

[7] In their briefing, Plaintiffs at times appear to equate the assets of SLC Professionals with those of the Management Companies.  (ECF No. 17 at 16.)  As with corporations and their subsidiaries, SLC Professionals

not identified a single reference to SLC Professionals in the Combination Agreement. Although Plaintiffs represent that they have alleged that "the Combination Agreement itself is fraudulent" (ECF No. 17 at 9) a review of the Complaint reveals that they made no such allegations.  (ECF No. 1 ¶¶ 32-45.)  In fact, the Complaint describes the asset transfer as occurring "pursuant to" the Combination Agreement.  (ECF No. ¶ 33.)

In these circumstances, this Court may not credit the Complaint's contradictory claim that the assets of SLC Professionals were transferred to form New Milestone.  As discussed below, the Plaintiffs' failure to properly allege the transfer of SLC Professionals' assets requires Counts I, II, III, IV, V, VII, VIII, IX, X, XI, and XV to be dismissed in whole or in part, as each of these Counts are premised on the transfer of assets from SLC Professionals.

## II.    Personal Jurisdiction over New Milestone.

Defendants argue that this Court lacks personal jurisdiction over Defendant New Milestone.[8]  (ECF No. 16-1 at 14-17.)  At this stage, Plaintiffs must make a *prima facie* showing of personal jurisdiction.  *Consulting Eng'rs Corp.*, 561 F.3d at 276.  To resolve this issue, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst*, 334 F.3d at 396.  The Plaintiffs have failed to make the requisite showing even under this forgiving standard.

---

does not own the assets of the Management Companies solely by virtue of the former's alleged "ownership" of, or membership in, the latter. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 123 S. Ct. 1655, 1660 (2003) ("The properties of two corporations are distinct, though the same shareholders own or control both. A holding corporation does not own the subsidiary's property" (quoting 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 31 (rev. ed. 1999))); *In re Opus E., L.L.C.*, 480 B.R. 561, 575 (Bankr. D. Del. 2012) ("A limited liability company interest is personal property.  A member has no interest in specific limited liability company property." (quoting 6 Del. C. § 18-701)).

[8] New Milestone is named as a Defendant in Counts I, II, III, IV, V, VII, VIII, IX, X, and XV.

Before a court can exercise personal jurisdiction over a non-resident defendant, it must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *Sigala*, 145 F. Supp. at 489. To satisfy the first prong, a plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Pubs., Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), this Court must adhere to the interpretations of the Maryland Court of Appeals. *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citation omitted). Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution." *Carefirst*, 334 F.3d at 396.

Under the second prong, courts determine whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken & Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

17

Thus, a court may exercise two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction arises from a defendant's contacts with the forum state which are so continuous and systematic as to essentially render the defendant "at home." *Id.* On the other hand, specific jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. When assessing specific jurisdiction, the United States Court of Appeals for the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278.

"The purposeful availment requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Ryan v. TEV Corp.*, ELH-18-3852, 2019 WL 5683400, at *5 (D. Md. Nov. 1, 2019) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985)). The United States Court of Appeals for the Fourth Circuit has identified several nonexclusive factors courts may consider to determine whether a defendant has purposefully availed itself to the forum state. *Consulting Engineers*, 561 F.3d at 278. For example, in the business context, purposeful availment may be inferred by the obligation to perform contractual duties in the forum state. *Consulting Engineers*, 561 F.3d at 278 (citing *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982)). It may also be

found where the defendant "reached into the forum state to solicit or initiate business." *Consulting Engineers*, 561 F.3d at 278 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221, 78 S. Ct. 199 (1957); *Burger King*, 471 U.S. at 475-76, 105 S. Ct. 2174.

Plaintiffs have not provided any basis for this Court to exercise general jurisdiction over New Milestone. The Complaint alleges that New Milestone is a Delaware LLC with its principal place of business in North Carolina. (ECF No. 1 ¶ 12.) The Complaint alleges that New Milestone is "registered to do business in Maryland" and that "some [of its] operations" take place in Maryland, including the operation of assisted living facilities known as Symphony Manor in Baltimore, Maryland and Woodholme Gardens in Pikesville, Maryland. (*Id.* ¶¶ 7, 12.) Aside from managing these two facilities, the Complaint does not contain details concerning any purported continuous and systematic contacts between New Milestone and the State of Maryland such that New Milestone may be fairly regarded as being "at home" in Maryland. As the Complaint makes no effort to justify this Court's exercise of general jurisdiction over New Milestone, this Court will not assert it.[9]

Plaintiffs have also failed to make a *prima facie* showing that New Milestone is amenable to this Court's specific jurisdiction. The case against New Milestone arises from the transfer of assets from SLC Professionals and the Management Companies to Milestone WA, a Washington LLC. (ECF No. 1 ¶¶ 21, 27, 33; Combination Agreement, ECF No. 1-3.) SLC Professionals (a Delaware LLC) and the Management Companies (a series of Delaware,

---

[9] This Court rejects the Plaintiffs' contention that Defendants waived any challenge to this Court's exercise of general jurisdiction. (ECF No. 17 at 15.) Defendants preserved their objection to all forms of personal jurisdiction by arguing that New Milestone is "a [Delaware] corporation with its principal place of business in North Carolina [that] is not subject to personal jurisdiction in this case and must be dismissed from this action." (ECF no. 16-1 at 14.)

Arkansas, and Indiana LLCs) oversaw assisted living facilities "located predominately in Florida and Arkansas," and are not alleged to have any property in Maryland or to do business in Maryland.   (*Id.* ¶ 27.)   The combination of assets between SLC Professionals, the Management Companies, and Milestone WA resulted in the creation of New Milestone, a Delaware LLC with its principal place of business in North Carolina.  (ECF No. 1 ¶ 12.) Plaintiffs simply have not alleged that this lawsuit arises from any direct connections to Maryland.

The purported indirect links between New Milestone and Maryland are extremely attenuated.   Dwyer, who allegedly orchestrated the New Milestone transaction, "regularly engages in business" in Maryland, but it is not alleged that he conducted this particular transaction from Maryland.  (ECF No. 1 ¶ 7.)  While the Complaint alleges that Dwyer used CFG Bank, a Maryland corporation, "to facilitate the wrongful conduct which is the subject of th[e] Complaint," the Complaint does not specify how CFG Bank factored into the formation of New Milestone.  (*Id.* ¶ 6.)  Finally, even had the Complaint properly alleged that SLC Professionals transferred assets to New Milestone, such an allegation would not give rise to personal jurisdiction over New Milestone.  Although it is alleged that SLC Professionals required the approval of CSCV Consulting, a Maryland LLC and member of SLC Professionals, before making certain decisions (*see* ECF No. 1 ¶¶ 22, 25-26; ECF No. 1-2 § 8.3), this indirect Maryland connection cannot render New Milestone subject to this Court's personal jurisdiction.  New Milestone in no way availed itself to Maryland by accepting non-Maryland assets held by a non-Maryland LLCs merely because one of these LLCs (SLC Professionals) was controlled by a Maryland member (CSCV Consulting).  This is the precisely

the sort of "random" Maryland contact that cannot justify the exercise of personal jurisdiction over New Milestone. *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174 (1985).

Plaintiffs argue that New Milestone is amenable to suit in Maryland because the Combination Agreement provided that New Milestone would "close on its receipt of all of the transferred assets . . . in Baltimore, Maryland." (ECF No. 17 at 15.)  Further inspection of the Combination Agreement complicates this assertion.  The Combination Agreement states that closing would "take place at the offices of Venable LLP in Baltimore, Maryland or remotely via the electronic exchange of documents and signatures (by facsimile or electronic mail transmission) as described in Section 2.6 on January 16, 2017."[10]  (ECF No. 1-3 § 2.5.) "At or prior to" closing, the parties were to organize New Milestone under Delaware law and were obligated to transfer the assets of the Management Companies and Milestone WA to the newly formed entity.  (ECF No. 1-3 §§ 2.1, 2.6(a)(i).)

At this stage, the Court must resolve disputed facts and draw inferences in favor of the Plaintiffs.  It may be inferred that the asset transfer was effectuated in a Baltimore law office despite the Combination Agreement's reference to the electronic exchange of documents. Nevertheless, personal jurisdiction does not turn on whether the closing occurred in Baltimore or remotely.  In determining whether specific jurisdiction is appropriate, this Court must consider whether the Defendant New Milestone purposefully availed itself to Maryland—for example, by soliciting business in Maryland or entering into contractual agreements in

---

[10] Plaintiffs argued that the Combination Agreement's reference to a Baltimore, Maryland closing location was the "most important[]" factor weighing in favor of the exercise of personal jurisdiction, but omitted the full text of the relevant provision, which made clear that the transaction could also occur remotely. (ECF No. 17 at 15.)

Maryland.  *Consulting Engineers*, 561 F.3d at 278.  It is not alleged that the purported fraudulent conveyance effectuated by the Combination Agreement involved Maryland assets or Maryland entities.  New Milestone neither solicited business in Maryland nor negotiated the terms of the Combination Agreement.  New Milestone could not do either of these things because it did not exist when the agreement was formulated.

As previously discussed, New Milestone is a Delaware LLC which obtained assets from a series of Arkansas, Delaware, Indiana, and Washington LLCs which oversaw assisted living facilities "predominately in Florida and Arkansas."  (ECF No. 1 ¶ 27.)  New Milestone did not purposefully avail itself to Maryland merely because it was the beneficiary of an agreement that (possibly) occurred in Maryland.  To conclude otherwise would place far too much emphasis on the physical location of the transaction's execution and grant too little consideration to the substance of the agreement, which primarily involved the transfer of non-Maryland assets among non-Maryland entities in order to form a Delaware LLC, New Milestone, which has its principal place of business in North Carolina.  Accordingly, New Milestone is DISMISSED from this action.

## III.    Fraudulent Conveyance – Counts I, II, III, IV, and V.

In Counts I, II, III, IV, and V, Plaintiff ANHA alleges that Defendants Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting, and New Milestone engaged in a fraudulent conveyance by transferring the assets of SLC Professionals and the Management Companies to New Milestone.  (ECF No. 1 ¶¶ 69, 75, 81, 87, 93.)  ANHA is suing in its capacity as a purported creditor and member of SLC Professionals and as a purported creditor

of the Management Companies. (*Id.*) Each Count invokes a different provision of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Com. Law Code Ann. §§ 15-201, *et seq.* MUFCA and other provisions of the Maryland Code effectuate a state policy of protecting the interests of creditors whenever a transfer of assets occurs. *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 297, 562 A.2d 1286 (1989). Accordingly, MUFCA "allows a *creditor* of the *transferor* to attach or levy on the property conveyed to the transferee, if the transfer is fraudulent." *Odjaghian v. EngagePoint, Inc.*, JKB-18-0151, 2018 WL 3329617, at *4 (D. Md. July 6, 2018) (quoting *Baltimore Luggage*, 80 Md. App. at 291) (emphasis added). The Maryland Code defines the term "creditor" broadly as "a person who has any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." Md. Code, Com. Law § 15-201(d).

ANHA has not stated a fraudulent conveyance claim in Counts I, II, III, IV, and V because it has not adequately alleged that it is a creditor of a transferor. As discussed *supra*, Plaintiffs' claim that the assets of SLC Professionals were transferred cannot be accepted as true. Therefore, SLC Professionals—or any entity which allegedly controlled it—is not a transferor. In other words, SLC Professionals did not participate in a conveyance which may be sued upon. The Complaint does not present any basis for concluding that ANHA is a creditor of the Management Companies. Plaintiffs tacitly acknowledge this point by failing to make any argument concerning the purported creditor-transferor relationship between ANHA and the Management Companies in their Response to the Motion to Dismiss. (ECF No. 17 at 22-24.) Accordingly, Counts I, II, III, IV, and V are DISMISSED.

IV.     **Breach of Fiduciary Duty – Counts VI and XII.**

In Count VI, Plaintiff ANHA sues Defendants Dwyer, Capital Funding Group, CSCV Holdings, and CSCV Consulting for breaching their fiduciary duties to ANHA by "engag[ing] in wrongdoing in connection with the Combination."  (ECF No. 1 ¶ 98.)  This wrongdoing included failing to renew the insurance policies of SLC Professionals[11] which were allegedly designed to protect ANHA and transferring the assets of SLC Professionals and the Management Companies, leaving them unable to indemnify ANHA in accordance with the SLC Professionals Operating Agreement.  (*Id.* at ¶¶ 32-45, 98.)  In Count XII, Plaintiff AJZ Capital seeks recovery on a distribution right allegedly codified in the CSV MA LLC operating agreement.  AJZ Capital sues Defendants Dwyer, Capital Funding Group, CSCV Real Estate, and Reynolds for breaching their fiduciary duties to AJZ Capital by diverting funds from the sale of the Vero Deal facility and depriving it of the benefits of that distribution right.  (*Id.* ¶ 127.)  Defendants argue that Plaintiffs may not bring these claims because they are derivative in nature.  Plaintiffs argue that the claims may be asserted directly because the Defendants' actions have caused them harm which is distinct from the harm suffered by SLC Professionals, the Management Companies, and CSV MA LLC. (ECF No. 17 at 29.)

To resolve this issue, this Court must apply Delaware law.  A federal court sitting in diversity applies the choice-of-law rules of the forum state.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Maryland courts follow the "internal affairs doctrine," which requires

---

[11] The Complaint does not identify the holder of the insurance policies which were allegedly cancelled or allowed to lapse.  In their Response, Plaintiffs identify the policy holder as SLC Professionals.  (*Compare* ECF No. 1 ¶ 98 *with* ECF No. 17 at 29.)

application of the law of the state of incorporation to matters "peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *NAACP v. Golding*, 342 Md. 663, 673, 679 A.2d 554 (1996). The rule also applies to matters governing the internal affairs of LLCs and REITs. *See, e.g.*, *In re AGNC Inv. Corp.*, TDC-16-3215, 2018 WL 3239476, at *6 (D. Md. July 3, 2018) (applying Delaware law to REIT incorporated in Delaware). The parties agree that Delaware law applies because SLC Professionals is organized under Delaware law. (ECF No. 17 at 18, 28-29; ECF No. 18 at 14.) Accordingly, this Court applies Delaware law to determine whether the claims asserted in Counts VI are derivative.

To determine whether a claim is direct or derivative, Delaware courts ordinarily apply a two-prong test established in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). Under that test, the court must determine "(1) who suffered the alleged harm (the company or the suing stockholder, individually); and (2) who would receive the benefit of any recovery or other remedy (the company or the stockholder, individually)." A direct suit requires an injury "independent of any alleged injury to the corporation" such that the plaintiff may prevail "without showing an injury to the corporation." *Tooley*, 845 A.2d at 1038. As applied to LLCs, the test considers the locus of the harms and benefits as between the LLC and the plaintiff. *See Stone & Paper Investors, LLC v. Blanch*, 2018-0394-TMR, 2019 WL 2374005, at *4 (Del. Ch. May 31, 2019) ("The same principles apply in the context of an alternative entity such as a limited liability company."); *Bakerman v. Sidney Frank Importing Co.*, 1844-N, 2006 WL 3927242, at *19 (Del. Ch. Oct. 10, 2006) (applying the *Tooley* test to an LLC).

Actions to enforce a right "personal" to the LLC members may be asserted directly. In *Stone & Paper Investors*, Plaintiff, an LLC member, asserted claims arising from the breach of two provisions of an LLC Operating Agreement. The first provision, Section 5.2, required the LLC "to disclose the terms and conditions of any interested transactions to its members." *Id.* at *4. The Court concluded that Plaintiff could bring this claim because the provision conferred a "personal right belonging to its members." *Id.* The second provision, Section 4.9, required LLC managers to receive reimbursement for reasonable expenses. *Id.* Plaintiff alleged that the LLC had improperly reimbursed certain LLC members in violation of this provision. *Id.* at *2. The Court concluded that Section 4.9 implicated a right belonging to the LLC. *Id.* at *4. Applying the *Tooley* test, the Court determined that the Plaintiff's claim based on a violation of Section 4.9 must be asserted in a derivative suit because (1) the LLC suffered harm by paying expenses without determining whether they were reasonable and (2) the LLC would receive the benefit of any recovery. *Id.*; *see also Sehoy Energy LP v. Haven Real Estate Grp., LLC,* 12387-VCG, 2017 WL 1380619, at *9-10 (Del. Ch. Apr. 17, 2017) (holding that breach of fiduciary duty claim based on false or misleading disclosures was direct in nature because the disclosures impinged the Plaintiffs' "right to withdraw their investments from the Partnership").

### A. Count VI asserts derivative claims and must be dismissed.

ANHA cannot pursue its fiduciary duty claim in Count VI directly. Plaintiffs identify two losses of "rights" or distinct harms they have suffered: (1) the loss of the benefits of SLC

Professionals' insurance coverage and (2) the loss of indemnification by SLC Professionals.[12] (ECF No. 17 at 29.)  These harms neither seek to vindicate the Plaintiffs' personal rights nor describe harms distinct from those suffered by SLC Professionals and the Management Companies.  In *Stone & Paper Investors* and *Sehoy Energy*, Plaintiffs' right to receive information was violated by the Defendants' failure to make necessary disclosures.  The alleged wrongdoing had a direct impact on the plaintiffs' right to receive information and in no way harmed the LLC or partnership involved.  In this case, however, the harm to the Plaintiffs flows indirectly from the primary harm to the LLCs involved.

The first harm ANHA identifies is "the loss of the insurance coverage that SLC had maintained to protect its manager, officers, and members."  (ECF No. 17 at 29.)   SLC Professionals' retention of insurance coverage is not a "right" belonging to ANHA.  The loss of insurance coverage is a harm felt by SLC Professionals in the first instance.  SLC Professionals suffered the loss of insurance; not ANHA.   ANHA cannot prevail on its claim without showing that SLC Professionals suffered a loss.  If ANHA prevailed on its claim, the remedy would flow to SLC Professionals to compensate it for its loss of insurance coverage; it would not directly benefit ANHA.  Accordingly, ANHA does not have standing to pursue this claim.

Next, ANHA identifies "the loss of its rights of indemnity under the SLC Operating Agreement."  (ECF No. 17 at 29.)  The loss of potential indemnification is an indirect harm

---

[12] ANHA also complains that it has experienced "improper overbilling for operating losses of assisted living facilities other than New Port Richey."  (ECF No. 17 at 29.)  Count VI does not allege that this action constituted a breach of fiduciary duty; instead, it focuses entirely on the transfer of assets to New Milestone. (ECF No. 1 at ¶¶ 98-99.)  ANHA may not amend its Complaint by way of its briefs.

suffered as a result of the depletion of SLC Professionals' and the Management Companies' assets.   Again, the claim rests on a faulty premise: the Combination Agreement reveals that SLC Professionals was not a party to the transfer of assets to New Milestone.  Even if this premise had been properly alleged, however, the claim would be derivative in nature.  The loss of indemnification is alleged to be the consequence of the Defendants' depletion of SLC Professionals' assets.  (ECF No. 1 ¶ 44 ("The Combination rendered SLC Professionals and the Management Companies unable to meet their liabilities, including their obligations to indemnify ANHA.").   This alleged wrongdoing describes a harm suffered by SLC Professionals and the Management Companies.  The Plaintiffs cannot prevail on this claim without showing that SLC Professionals and the Management Companies suffered an injury. Any recovery of these depleted assets would necessarily flow to SLC Professionals and the Management Companies.  This claim must be pursued in a derivative action.  Accordingly, Count VI is DISMISSED.

### B.  Count XII asserts direct claims against CSCV Real Estate.

In Count XII, AJZ Capital seeks to recover a distribution that was purportedly owed to it as a member of CSV MA LLC.  As in *Stone & Paper Investors* and *Sehoy Energy*, AJZ Capital complains of the impingement of a personal right, namely, a right to receive payment from CSV MA LLC.  This right of distribution does not belong to CSV MA LLC; rather, it belongs solely to AJZ Capital.  Under the *Tooley* framework, the harm associated with the alleged converted distribution is felt only by AJZ Capital and any recovery would flow to it, not CSV MA LLC.  Accordingly, AJZ Capital may bring Count XII as a direct claim.

Defendants argue that Plaintiffs have failed to allege a fiduciary duty owed to AJZ Capital by Defendants Dwyer, Capital Funding Group, CSCV Real Estate, and Reynolds. An essential element of a fiduciary duty claim is the existence of a fiduciary duty. *Malpiede v. Townson,* 780 A.2d 1075, 1096 (Del. 2001). "Controlling members in a manager-managed LLC owe minority members the traditional fiduciary duties that controlling shareholders owe minority shareholders. *In re Atlas Energy Res., LLC*, 4589-VCN, 2010 WL 4273122, at *7 (Del Ch. Oct. 28, 2010) (citing *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 3658-VCS, 2009 WL 1124451, at *8-11 (Del. Ch. Apr. 20, 2009)).[13]

In this case, AJZ Capital generally alleges that all Defendants named in Count XII owed it a fiduciary duty in their "positions as managers, majority owners and persons in control of CSV MA LLC." (ECF No. 1 ¶ 123.) Alternatively, the Complaint alleges that "these Defendants were in a confidential and trust relationship with AJZ Capital." (*Id.*) Of these Defendants, CSCV Real Estate is alleged to be the "operating member" of CSV MA LLC. Although the exact nature of this role is not specified, the allegation is sufficient at this stage to support the existence of a fiduciary duty owed by CSCV Real Estate as a "controlling member" of CSV MA LLC. The Complaint does present any basis for finding a fiduciary duty owed by the remaining Defendants. Accordingly, Count XII may proceed, but only as to Defendant CSCV Real Estate.

---

[13] The Complaint fails to specify where CSV MA LLC is incorporated or indicate where the alleged diversion of $180,000 occurred, rendering a complete choice of law analysis impossible. *See In re AGNC Invest. Corp.*, 2018 WL 3239467, at *6 ("On a claim for breach of fiduciary duty . . . Maryland courts follow the 'internal affairs doctrine' and apply the law of the state of incorporation."). Nevertheless, the parties appear to agree that Delaware law governs the fiduciary duty claims as they both cite Delaware law when addressing this issue. (ECF No. 17 at 31; ECF No. 18 at 16.)

## V.     Indemnification – Count VII.

In Count VII, ANHA alleges that New Milestone must indemnify it for the costs it has incurred in litigating the negligence claims brought by nursing home residents.   The indemnification obligation arises from the SLC Professionals Operating Agreement.   New Milestone is alleged to be the successor-in-interest to SLC Professionals and therefore, ANHA argues, New Milestone must satisfy the indemnification obligations of SLC Professionals.

As previously discussed, the Complaint does not properly allege that SLC Professionals transferred assets to New Milestone.   As a result of contradictory allegations presented on this topic, the Complaint simply does not support the legal conclusion that New Milestone is the successor-in-interest to SLC Professionals.   Accordingly, Count VII is DISMISSED.

## VI.    Conversion – Counts VIII and XIII.

In Count VIII, ANHA alleges that Defendants Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting, and New Milestone have "taken the assets of SLC Professionals and the Management Companies for their own benefit" by transferring assets to New Milestone and have "combined to assess ANHA for losses falsely attributed to New Port Richey and to conceal such conduct from ANHA." (ECF No. 1 ¶ 107.)  In Count XIII, AJZ Capital alleges that Defendants Dwyer and Reynolds misappropriated $180,000 arising from the sale of the Vero Deal facility.  (ECF No. 1 ¶¶ 127-128.)

The intentional tort of conversion[14] consists of two elements: "a physical act combined with a certain state of mind." *Neal v. Pentagon Federal Credit Union*, ELH-18-451, 2018 WL 5786119, at *19 (D. Md. Nov. 5, 2018) (quoting *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004)). The physical act requires "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Neal*, 2018 WL 5786119, at *19 (quoting Darcars, 379 Md. at 261, 841 A.2d at 835). For the intent element, "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights" will suffice. *Neal*, 2018 WL 5786119, at *19 (quoting *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1985)).

Accordingly, to state a claim for conversion, the plaintiff must allege that "he or she had a property interest in property that was allegedly converted." *Brass Metal Prods., Inc.*, 189 Md. App. at 339. The property interest requires the plaintiff to be in possession of the converted good or enjoy a right of immediate possession. *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 64, 502 A.2d 1057 (1986). Even a "vested financial interest" does not suffice. *Id.*

Money is generally not subject to conversion claims. An exception exists for discrete, identifiable sums that have been diverted from their proper destination. *See, e.g., Roman v. Sage Title Group*, 229 Md. App. 601, 146 A.3d 479 (2016) (determining that "funds that have been

---

[14] As previously noted, the Complaint fails to specify where CSV MA LLC is incorporated or indicate where the alleged diversion of $180,000 occurred, rendering a complete choice of law analysis impossible. Nevertheless, the parties appear to agree that Maryland law governs the conversion claims as they both cite Maryland law when addressing this issue. (ECF No. 16-1 at 31; ECF No. 17 at 33.)

or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction" are subject to conversion claims (quoting *Allied Investment Corp. v. Jasen*, 354 Md. 547, 564-65, 731 A.2d 957 (1999))).

Count VIII does not state a claim for conversion.  A preliminary matter, the conversion claim arising from the transfer of assets from SLC Professionals would fail because the Combination Agreement clearly indicates that no such transfer occurred.   Nevertheless, the claim would fail even if that allegation had been properly presented.  ANHA is not alleged to have an immediate possessory ownership interest in the assets of SLC Professionals or the Management Companies.  Lacking such an interest, ANHA cannot press a conversion claim based on the transfer of assets to form New Milestone.  ANHA appears to argue that its ownership interest in the assets of SLC Professionals derives from its status as a member of SLC Professionals.  (ECF No. 17 at 34.) This membership status, however, did not entitle ANHA to the immediate possession of SLC Professionals' assets because the property of an LLC is distinct from the property of its members.   Count VIII's second theory of conversion—that ANHA was improperly allocated operating losses associated with New Port Richey—does not involve the diversion of specified sums.  Accordingly, Count VIII does not state a claim of conversion and is DISMISSED.

Count XIII states a claim for conversion.  It is alleged that AJZ Capital "was to receive a distribution of $180,000" under the terms of the Operating Agreement but that this amount was diverted and never paid to AJZ Capital.  (ECF No. 1 ¶ 51.)  With this allegation, AJZ Capital has asserted an immediate possessory interest in a discrete sum which was improperly diverted.  At this early stage, this contention is sufficient to state a claim of conversion.

The Defendants named in Count XIII—Dwyer and Reynolds—are amenable to suit. Both Dwyer and Reynolds are members of the CSV MA LLC board of directors. Additionally, Dwyer is the Chairman of the Board and controlling principal of Defendant Capital Funding Group, which he allegedly uses as his "alter ego." (ECF No. 1 ¶¶ 7, 9.) Capital Funding Group and Reynolds are the two members of CSCV Real Estate. (ECF No. 1 ¶ 13.) CSCV Real Estate is, in turn, the operating member of CSV MA LLC, the entity which allegedly converted a distribution to AJZ Capital. (*Id.* ¶ 13.) CSCV MA LLC has several other members: AJZ Capital and three entities owned by BlueMountain Capital Management. The Complaint generally alleges that "Dwyer and Reynolds, acting through Capital Funding Group, CSCV Real Estate and CSV MA LLC, with the cooperation of BlueMountain Capital Management, LLC, caused the distributions due to AJZ Capital from the sale of the assisted living facility in Massachusetts to be misappropriated." (*Id.* ¶ 52.)

Generally, the members of an LLC are not personally liable for the obligations of the LLC. Md. Code Ann., Corp. & Ass'ns § 4A-301. Nevertheless, "[a]n LLC member is liable for torts [it] personally commits, inspires, or participates in because [it] personally committed a wrong, not 'solely' because [it] is a member of the LLC." *Allen v. Dackman*, 413 Md. 132, 154, 991 A.2d 1216, 1228 (2010). The Complaint sufficiently alleges that Dwyer and Reynolds personally participated in the conversion through their status as members of the CSV MA LLC board of directors. Accordingly, Dwyer and Reynolds are proper Defendants to Count XIII.

VII.    **Conspiracy – Counts IX and XIV.**

Counts IX and XIV recast Plaintiffs' fraudulent conveyance and conversion claims as a conspiracy.  In Count IX, ANHA alleges that the transfer of assets used to create New Milestone was the result of a conspiracy between Defendants Dwyer, Capital Funding Group, CSCV Holdings, CSCV Consulting, and New Milestone.  (ECF No. 1 ¶ 110.)  Count XIV alleges that the diversion of $180,000 from AJZ Capital was the goal of a conspiracy between Defendants Dwyer, CSCV Real Estate, and Reynolds.

A civil conspiracy consists of "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 408 (D. Md. 2001). Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established. *See McDaniel v. Maryland*, RDB–10–189, 2010 WL 3260007, at *11 (D.Md. Aug.18, 2010). It is "improper" to plead civil conspiracy in a separate count of a complaint as if it were a "cause[] of action independent of an underlying tort." *Manikhi v. Mass Transit Admin.,* 758 A.2d 95, 110 n.6 (Md. 2000).  Counts IX and XIV are properly viewed as an attempt to expand the circle of liability surrounding the Plaintiffs' fraudulent conveyance and conversion claims, and ought to have been embedded in earlier Counts.

Count IX must be dismissed as a result of several defects associated with the underlying tort claims discussed *supra*: SLC Professionals is not properly alleged to have transferred assets

34

and ANHA does not have a property interest in the assets of SLC Professionals or the Management Companies.  Even without these defects, the claims would fail.  Both Counts IX and XIV must be dismissed because the Complaint merely alleges the existence of a conspiracy in a conclusory fashion.  The Complaint neither describes how the various Defendants conspired with one another nor alleges that they entered into an agreement or understanding.  Although the Complaint generally alleges that the Defendants named in these Counts were directly or indirectly controlled by Dwyer, it is not clear from the Complaint how these various entities coordinated or conspired with one another to bring about the allegedly unlawful asset transfers.  Accordingly, Counts IX and XIV are DISMISSED.

## VIII.    Accounting – Count X.

In Count X, ANHA seeks an accounting of the disposition and value of assets transferred by SLC Professionals and the Management Companies.  (ECF No. ¶ 116.)   As this Court has previously explained, "an accounting is . . . a remedy, not a separate cause of action, and not available absent some independent cause of action." *West v. Koehler*, RDB-11-3051, 2012 WL 868657, at *7 (D. Md. Mar. 13, 2012) (quoting *IFAST, Ltd. v. Alliance for Telecomm. Indus. Solutions, Inc.,* CCB-06-2088, 2007 WL 3224582, at *11 (D. Md. Sept. 27, 2007)).  Furthermore, the Court of Special Appeals of Maryland has stated that, "it is now clear . . . that whereas an equitable claim for an accounting once served a necessary discovery function, that function has been superseded by modern rules of discovery." *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Com'rs,* 155 Md. App. 415, 843 A.2d 252, 307–308 (Md.Ct.Sp.App.2004).  Accordingly, Count X is DISMISSED.

## IX.   Aiding and Abetting – Counts XI and XVI.

Count XI alleges that New Milestone aided and abetted Dwyer, Capital Funding, CSCV Holdings, and CSCV Consulting in transferring the assets of SLC Professionals and the Management Companies to New Milestone.  (ECF No. 1 ¶¶ 120-121.)  Count XVI alleges that CSCV Real Estate aided and abetted the diversion of assets from AJZ Capital.  (*Id.* ¶ 140.) Defendants seek dismissal of these Counts based on their assertion that the Plaintiffs' underlying tort claims of fraudulent conveyance and conversion fail and because the Complaint does not allege how the Defendants named in these counts aided and abetted those torts.

Like civil conspiracy, aiding and abetting requires a properly pled underlying tort.  *Gorby v. Weiner*, TDC-13-3276, 2014 WL 4825962, at *16 (D. Md. Sept. 23, 2014).  Under Maryland law, "[a] defendant is civilly liable as an aider and abettor where '(1) [there is] a violation of the law (tort) by the 'principal,' (2) defendant knew about the violation, and (3) defendant gave substantial assistance or encouragement to [the principal] to engage in the tortious conduct.'" *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1043 (1995) (citation omitted).  As Judge Chuang of this Court has explained, a claim for aiding and abetting must be supported by actions allegedly taken by the Defendant in aid of the principal. *Gorby*, 2014 WL 4825962, at *16.

As ANHA has failed to state a claim for fraudulent conveyance, it has also failed to state a claim under Count XI for aiding and abetting that very same fraudulent conveyance. Count XVI provides a basis for holding CSCV Real Estate liable for the alleged conversion of

assets owed to AJZ Capital.  The conversion claim arising from this same transaction (Count

XIII) is properly pled.  The Complaint sufficiently alleges that CSCV Real Estate brought

about the conversion through its status as the operating member of CSV MA LLC and its

relation to Dwyer and Reynolds.  Although CSCV Real Estate is named as the Defendant

responsible for committing a breach of fiduciary duty by effectuating the diversion of $180,000

as charged in Count XII, AJZ Capital may pursue this claim as an alternative basis for liability.

Accordingly, Count XI is DISMISSED but Count XVI may proceed.

### X.    Unjust Enrichment – Count XV.

In Count XV, ANHA alleges that Defendants Dwyer, Capital Funding Group, CSCV

Holdings, CSCV Consulting, Reynolds, and New Milestone were unjustly enriched by the

transfer of assets from SLC Professionals and the Management Companies to New Milestone.

To state a claim for unjust enrichment under Maryland law, a plaintiff must ultimately

demonstrate that (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant

had an appreciation or knowledge of the benefit; and (3) "[t]he acceptance or retention by the

defendant of the benefit under such circumstances as to make it inequitable for the defendant

to retain the benefit without the payment of its value." *Mohiuddin v. Doctors Billing & Mgmt.

Sols., Inc.*, 196 Md. App. 439, 449, 9 A.3d 859, 865 (2010) (citing *Alternatives Unlimited, Inc.*, 155

Md. App. 415, 496, 843 A.2d 252 (2004)).

Count XV requires dismissal because the Complaint does not allege that ANHA

conferred a benefit to anyone.  Furthermore, the assets of SLC Professionals and the

Management Companies did not belong to ANHA.  Even if the Court were to accept that the

assets of these entities were transferred, ANHA would have no claim to those assets. Accordingly, Count XV is DISMISSED.

## XI.   Imputed Liability – XVII.

In Count XVII, Plaintiffs ANHA and AJZ Capital demand judgment against Capital Funding Group and CFG Bank "for the full amount of Dwyer's liability." In their Response, Plaintiffs clarify that they are pursuing a claim of "outsider reverse-veil piercing," pursuant to which courts permit plaintiffs to pursue assets of a corporation in satisfaction of an individual's liabilities. *Greystone Operations, LLC v. Steinberg*, No. 454, Sept. Term, 2016, 2017 WL 1365365, at *4 n.4 (Md. Ct. Spec. App. Apr. 12, 2017) (acknowledging the existence of this theory of veil piercing, but not adopting it). Piercing the corporate veil is a difficult task under Maryland law.[15] As this Court has previously explained, Maryland upholds the corporate form even on occasions when a sham corporation has been created solely to avoid liability. *Iceland Telecom, Ltd. v. Info. Sys. & Networks Corp.*, 268 F. Supp. 2d 585, 591 (D. Md. 2003) (citing *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.,* 275 Md. 295, 309, 340 A.2d 225 (1975)). In general, Maryland courts consider five factors when assessing an attempt to pierce the corporate veil of a corporation: "(1) complete domination, not only of the finances, but of policy and business practice in respect to the transaction so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control [was] used by the defendant to commit fraud or wrong, to perpetrate the violation of the statutory or other

---

[15] As has been repeatedly noted, this Court may not conduct a complete conflict of law analysis because of the lack of specificity in the Complaint. Nevertheless, the parties appear to agree that Maryland law governs the issue of corporate veil piercing. (ECF No. 16-1 at 41; ECF No. 18 at 23.)

positive legal duty, or dishonest and unjust act in contravention of the plaintiff's legal rights, and (3) that such control and breach of duty proximately caused the injury or unjust loss." *Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 735, 838 A.2d 1204 (2003) (internal quotation marks and citation omitted).

Assuming *arguendo* that Maryland even permits "outsider reverse veil-piercing," the *Hildreth* factors do not weigh in favor of permitting its application in this case. Plaintiffs have not adequately explained how Dwyer used Capital Funding Group and CFG Bank to divert funds from AJZ Capital. Rather, the Complaint only broadly alleges that Dwyer "used CFG Bank to facilitate the wrongful conduct which is the subject of this Complaint" and accuses CFG Bank of "assisting" Dwyer with the conversion of funds intended for AJZ Capital. (ECF No. 1 ¶¶ 6, 147.) Likewise, the Complaint does not identify a single specific act taken by Capital Funding Group, which is only indirectly related to CSV MA LLC. Instead the Complaint merely alleges that Dwyer "act[ed] through" Capital Funding Group. (*Id.* ¶ 52.) Accordingly, Count XVII is DISMISSED.

## XII.    Punitive Damages – Counts XII, XIII, and XVI.

Only Counts XII, XIII, and XVI may proceed. AJZ Capital seeks punitive damages in all three counts. Defendants have moved to dismiss the punitive damages demand. (ECF No. 16-1 at 19-20.) Under Maryland law, a plaintiff in a tort action "must prove that a defendant had actual malice in order to obtain punitive damages." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (citing *Montgomery Ward v. Wilson*, 664 A.2d 916, 930 n. 5 (Md. 1995)). The Court of Appeals of Maryland has explained in *Owens-Illinois,*

*Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992) that "punitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." "Under *Zenobia*, a plaintiff must demonstrate the tortfeasor acted with actual malice, meaning the 'defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud.'" *Cavey v. Mach Trucking LLC*, No. GLR-16-1339, 2016 WL 5462791, at *2 (D. Md. Sept. 29, 2016) (quoting Zenobia, 601 A.2d at 652).

Counts XII, XIII, and XVI all arise from the Defendants' alleged diversion of $180,000 from AJZ Capital. Drawing all reasonable inferences in favor of the Plaintiffs, it may be inferred from the allegations of the Complaint that Defendants acted with malice when they diverted these funds. Accordingly, this Court will not dismiss the demand for punitive damages.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 16) is GRANTED IN PART and DENIED IN PART. Specifically, New Milestone is DISMISSED for lack of personal jurisdiction. All Counts except Counts XII, XIII, and XVI are DISMISSED. Count XII may proceed as to Defendant CSCV Real Estate. Count XIII may proceed as to Defendants Dwyer and Reynolds. Count XVI may proceed as to CSCV Real Estate. In summary, the following claims remain:

| COUNT | TITLE | DEFENDANTS |
|-------|-------|------------|
| XII | Breach of Fiduciary Duty | CSCV Real Estate |
| XIII | Conversion | Dwyer and Reynolds |

| XVI | Aiding and Abetting | CSCV Real Estate |
|-----|---------------------|------------------|

A separate Order follows.

Dated: May 19, 2020

_____/s/_____
Richard D. Bennett
United States District Judge